Good morning, Your Honors. Devin Burstein on behalf of Mr. Visconti. With the Court's permission, I'd like to turn directly to the return of capital issue. To begin with the first principles, as always, defendants have a fundamental constitutional right to present their theory of the defense. It's not a platitude. It's the cornerstone of the adversarial process. It's not much of a process if the government gets to choose the charges and then veto the defense. And that's why this Court and the Supreme Court have consistently said the standard is generous. Even if the evidence is weak, even if it's insufficient, even if it's inconsistent or of doubtful credibility, the defendant gets to present his defense or her defense unless they have absolutely nothing. Only in those cases when there's absolutely nothing to support the defense should it be precluded. Here, Mr. Visconti met that minimal threshold showing as to the return of capital defense. And I think what makes this a little difficult is the idea that we don't have typical distributions. We have diversions. We have diversions from a company. I mean, there's just no question. These are not authorized by the Board of Directors. We have diversions. So what does the Supreme Court say? That's what BULWARE is all about. While they never, quote, while they never even pass through the corporation's hands, even diverted funds may be seen as capital distributions for the purposes of 301 and 316. So our decision in BULWARE on the remand, we said there's no direct evidence of a distribution. Then the defendant has to rule out all of the alternative possibilities. And here, of course, there wasn't any direct evidence. In fact, Mr. Visconti wasn't even a shareholder of Axiom. It was through multiple different corporate entities of which he was not 100% shareholder. And he testified at trial it's consistent with the loan, this distribution. So doesn't that fail the BULWARE test? No, Your Honor. And there's several questions in there. So with the Court's indulgence, I'd like to try and break them down. So what the Court actually says in its BULWARE decision is at the very least, a taxpayer must tender some evidence of a nexus between the corporate distribution and stock ownership or show that there were no other alternate explanations. And what is that saying? It's saying there has to be some relationship between the equity ownership, and that's what we're saying is stock. This is a closely held corporation, so it's not shares of IBM. I know the Court's well aware of that. So there's a relationship between the equity ownership and the distribution. And here, that is met, and it's met in three different ways. First, the entire, and let me just point out one thing before I answer you directly, Judge Acuda, if you'll just bear with me for one second. What this Court said in BULWARE is in evaluating whether a defendant was entitled to present a return of capital theory, we examine not only the formal offer of proof, but the record as a whole. So what's the record as a whole as to this first prong? So the very first thing is the entire theory of the prosecution is that because he is the majority shareholder, because he controls Axiom, he's able to make these diversions. And according to the Supreme Court. The government says no, it's because he was in a managerial position and was able to take divert funds. So even, well, we disagree with that. It's because he could control the corporation that he could do with it what he wanted, including these diversions. But let's just put that one to the side. If the Court doesn't agree with the first one, I'll go to the second and then the third. Second was his direct proffer through his attorney in response to the government's motion to exclude his defense. Quote, Mr. Visconti took distributions from Axiom and was authorized to do so pursuant to his right to receive a return of his capital investment in the amount of approximately $13 million. That's at ER 217. That's saying I took these diversions as my right to get a return of capital. The jury could disregard that, but that's the point. The jury gets to separate the truth from the malarkey, not the court, not the government. Do we disregard the evidence in the trial record where he testified on multiple occasions that this was a loan, that he borrowed the money? Yes, for two reasons. The first one is it has to be seen in the light of what actually happened. As a legal matter, his defense was precluded, and so anything that happened thereafter is, you know, he's perhaps coming up with defenses that he shouldn't be or saying things. But the more important one is the factual one. His testimony is not clear as to what loans he's talking about. I mean, his testimony was, and probably a lot to do with his trial attorney's questioning, his testimony was not entirely clear which loans, because we know there were authorized loans. And he goes back and forth, are they a loan, what are they? He's pretty rambling, I think we can all agree, in terms of his discussion. But if the district court doesn't preclude his defense, none of that happens. I mean, it's a little bit unfair, I think, to say he said this and this after the defense was precluded. So I would ask, my suggestion is yes to your question, is that that should be disregarded. Counsel, is there any principle of corporate law that would allow a corporation to return capital to some of its shareholders and not all of the shareholders? I don't know the answer to that, Your Honor. But I can put. There's a number of the cases, like the Tollefson case. That's what I was about to bring up. In the Tollefson case, you've got 100 percent ownership of the one company that owns the other company. In each case, it's 100 percent ownership of both. And he does not here, he does not own 100 percent of a corporation that owns 100 percent of Axiom. That's a good point. And it brings up two things to mind. So I should, if you'll let me take back my last answer, yeah, I think there is, yes, Your Honor, I think there is at least some principle. And I'm no corporate lawyer, but I do know that a number of provisions provide for first-in, first-out money. And here, oh, even better. The only person here who put capital in is Mr. Visconti. There would be no return of capital to Mr. Garber. Mr. Garber didn't fund any of Axiom. So there's no capital to be returned. And, in fact, I just took a shot at trial counsel before, but I'll now give him some He says in his response, to be clear, and this is paraphrasing, but to be clear, only Mr. Visconti, nobody else can take advantage of return of capital defense because only Mr. Visconti has capitalized Axiom. And that's undisputed. There's nobody who claims that Ronald Garber or anybody else put any money into Axiom. Now, the government says Axiom, the money he put in was paid back. But that, to me, that's the first of all that goes to the third prong. But, second of all, this is a classic jury issue. I don't even think it's close. Was there any evidence other than his statement, Mr. Visconti's statement, that he estimated the property to be $8 million? The government's evidence was the declaration by the CPA saying the value of the property pursuant to the escrow documents was 6.25 or something along that line. Did the defendant, did the defense, proffer any evidence of the value of the property? Yes, Your Honor. His sworn declaration, which we know about from our last case, his sworn declaration estimated the property. So he said, I estimate the value of the property. Does that constitute evidence of the value of the property? Yes, the jury could consider that. Could a jury rationally sustain that? I think that's the defense based on his saying, I estimate the value of the property. Well, Your Honor, he could rationally sustain a reasonable doubt. He doesn't have a burden to sustain anything. Rationally sustain means could a jury find a reasonable doubt. Because there is evidence upon which the jury could rationally sustain the defense. But what does that mean? Yes, Your Honor, I don't mean to quibble, but what does that mean? To sustain a defense means to find a reasonable doubt. So you think that his statement and his declaration that he estimated the value of the property at $8 million would be in that? I think that under any standard that creates a material factual dispute. That wouldn't be, if I was up here asking for summary judgment, the court, I assume, would say, no, we have a declaration saying it's worth $8 million. That may be disproven at a trial, but you go to trial. And there's a second point, Your Honor, as to why it doesn't matter ultimately. Because let's just say it's worth $6 million, plus the $4 million he puts in. That's $10 million. He says I only got $4 million back. Ten minus four is $6 million. The government says he took way less than $6 million, leaving under Boulware a huge surplus of return of capital. So if you want to discredit his declaration, it doesn't change our analysis. So in that, I mean, I hope that answers the court's question on the document. He said I only remember $4 million. Correct. But then there was a lot of evidence saying there was more. He didn't say I didn't receive any more. He just said what his memory was. So I'm not sure how helpful that is. I don't think that's a fair characterization. He was saying I got back $4 million. Did he say that or did he say I only remember? I thought his declarations were regarding his memory. And they point out that what the government said. Is that true? That it was, did he make any? I think he used the term I don't remember getting more than $4 million. But if we're going to parse that, certainly you would remember getting $8 or $12 million. I mean, this is not, it's not like I don't remember whether the guy gave me 50 cents or $1.50. We're talking about, you know, $12 million. So to say the word remember hinges on it, I don't think is particularly fair in this context. But that was not the only evidence on the other side. The government submitted evidence from other people. It wasn't Mr. Visconti. They didn't show his bank records that he got $12 million. This is why we have juries. That's why I started with this first principle. Why are we not trusting the jury to get this right? I'm not saying, I don't have to, this is not a sufficiency claim. Is my evidence weak? Is it, you know, insufficient? Is it of doubtful credibility? Even if you, if the Court looks at me and says, Mr. Burstein, yes to all three. He still gets to make his defense. This is not the government's decision. As a defense lawyer, it's not the government's decision. It's his decision. He's the one being charged with a Federal crime. He's the one standing trial. If the defense is nonsense, you know what the jury will do? They'll convict. That's why we have a jury system. That's why we say the Federal government doesn't get the veto power. Here he made the minimal showing. And because he made the minimal showing, he should be allowed to present his defense. I think we've, unless the Court has questions, I think we've exhausted the return of capital issue. I'm happy to answer any questions. We have a lot of, there's a lot of ground to cover in terms of the trial. I think the only one maybe worth discussing right now is the Ronald Garber, the cutting off of Mr. Garber's cross, the cross-examination about the attorney bar complaint. But if the Court has no questions about that, I will sit down and save my time for rebuttal. Why don't you do that? Why don't you save your time? Thank you so much, Ron. Thank you. Good morning. May it please the Court, Angela Davis for the United States. In this case, the facts presented before the District Court, after the defense was given more than one bite at the saple, the facts actually categorically refuted the return of capital defense. And that is because even if we indulge the fiction, which I think as Judge Bivey's comments suggest, and I would agree, we should not indulge that fiction. There is no authority that the defendant, Mr. Visconti, should have been treated as the equal of Unity America Fund, which was a separate entity with separate tax returns. But even if we take that leap and indulge the fiction that Mr. Visconti is equal to Unity America Fund, the evidence categorically refuted the availability of the return of capital defense. And it came in principally through the defendant's own judicial admissions in his Los Angeles Superior Court case. In his divorce, he submitted declarations saying that Unity America Fund redeemed all of its stock in Axiom, in specific amounts, on specific dates. It's at excerpt of Record 210. Defendants came into his own divorce. What specific language? Because when I looked at that exhibit, I wasn't sure what language you were relying on exactly. It's in bold print in the Declaration of Christopher Toto, which the defendant put into his Los Angeles Superior Court divorce case in order to demonstrate the context. He's trying to tell the divorce court, divorce court, I do not have unfettered access to Axiom. And one of the reasons is I'm not a stockholder in Axiom, and moreover, the corporation that I control, Unity America Fund, got all of its stock repurchased by Axiom, redeemed all of its stock shares, and that's laid out in that declaration in specific dollar amounts and on specific dates, dating from April 21, 2005, a $4 million payment, another $4 million payment on February 6, 2006. So on ER 209 in paragraph 11 of the, this is the Toto Declaration, he says Axiom was and is prohibited from making distributions to shareholders, including but not limited to Mr. Visconti. So what's the source of that? What does he mean, was and is prohibited? Are we talking about the corporate charter? Are we talking about California state law, Delaware law, federal law? To be candid, Your Honor, I'm not sure what Mr. Toto had in mind in that declaration, but I think the heart of the declaration's relevance to this critical question is the payment back of Axiom's shares in the amount of $12.25 million. And critically, the defendant's response to that, Judge Acuda was exactly right, was I don't remember. It was not I deny that it happened or I have evidence that it happened another way. His response was, and that is in Excerpt of Record 226, I do not recall any payment on April 21, 2005. And in the concluding paragraph of the defendant's declaration, he says, I'm disputing Mr. Toto's version of the facts. I only recall a single payment of $4 million. That's Excerpt of Record 226. The government, of course, in response, submitted authenticated bank records establishing very clearly that, in fact, those payments were made in the exact amount, $4.25 million, $4 million, $4 million, on the exact dates as the defendant himself represented to the judge in his L.A. Superior Court case. It was established that that stock basis was wiped out. And in response to that, the district court even gave the defense another bite at the apple. This was not a decision made by the government. This was a decision made by the district court, and I would submit well within the district court's discretion on the admissibility of expert testimony, which was the context in which this question arose. And the district court even invited further briefing on this. And with the further briefing that came in, it was the citation to the Tolufson case regarding the privity which sidestepped this whole question of the basis being wiped out. There was some evidence about the value of Axiom's initial contribution, initial capital contribution, and even that evidence viewed most charitably established that the basis was entirely wiped out. If the value of the property was over $8 million, wouldn't there still be basis remaining in Axiom? Well, what the defendant said on November 12, 2016 in his motion in limine was that the value of property was in excess of $3.4 million. That is what the defendant said on November 12, 2016. The forensic accountant whose declaration was put into evidence in this context when the court was weighing the issues said that based upon appraisals at the time, the value of the property was valued at $6.25 million, which the forensic accountant opined was an inflated value. Subsequently, in this case, the defendant floated the idea that the value of the property was $8.25 million. He never provided any evidence and, indeed, never even floated the idea that it could be higher than $8.25 million, which the forensic accountant opined was grossly inflated. He even opined that $6 million was an inflated value. So opposing counsel says the declaration of Mr. Visconti that he estimated as over $8 million was sufficient to create a factual issue for the jury. Why isn't that correct? He never showed, even if we assume that it was $8.25 million, the basis would be wiped out by those $12.25 million in payments and also the record before the court, especially with Mr. Visconti himself saying just a couple of months earlier that the value of the property was $3.25 million and with the forensic accountant, whose declaration on that particular point was never challenged, saying that the value of the property was assumed to be $6 million based upon transactional documents at the time, but he suspected the value was inflated, which would give a basis of $10.25 million. Even then, even with the most charitable valuations of this property and taking the defendant's own numbers of $8 million or $8.25 million, the basis was wiped out, and indeed the defendant himself in his own prior judicial admissions, and we've cited case law on why that should be binding on him, said that Axiom's basis was wiped out. I thought that if we credited Visconti on everything that it was over $13, something like $13.1 million, which would be greater than what was returned from Axiom. That was also dealt with in the motions eliminated. The way that he got to the over $13 million was he attached to a declaration some checks that were to a person named Lynn White. However, if you look at those checks, and we actually, I apologize, don't have the excerpt of record citation at my fingertips. However, the government directly responded to that, that the checks the defendant was counting to get to the number of above $13 million were checks from Unity America Fund to Lynn White, and they had interest on the checks and they had other details on the checks, not capital investment, and the government very clearly addressed why that was not a capital contribution. It wasn't from the defendant, first of all, and also it was inconsistent with the defendant's own prior statement. And the interest would account for how much? It would account for, I think the defendant at that juncture was teeing up the idea that the basis was about $13 million and change, but again, even then, $12.25 million was repaid, I think that's pretty conclusively established, and $5 million was diverted. In addition, this would be no defense to the conspiracy by which Garber also was getting half of the $5 million in diverted funds, but we needn't get there, because even if we assume this grossly inflated basis of over $13 million, the defendant's diversions exceeded that. And in addition, just to go to Judge Bivey's initial question at the outset, I don't think we need to get to this point because it's so clear that the basis was eliminated. However, the showing of a nexus is even weaker than the showing found insufficient in this Court's decision in the 2009 Boulware case, that is to say the post-Supreme Court decision. In the 2009 Boulware case, the showing that was made was that the defendant was a shareholder. We didn't have that showing here. And that the corporation did not have earnings and profits. And similar to the case here, the defendant made a lot of inconsistent statements, including floating the idea that it was a loan and floating other alternative theories as to why the money wasn't reported. So what is the government's position on the three-part Boulware test Part 1? This is what the government, where the Supreme Court says, well, we don't need to explain this. And our court in Boulware 4 says, well, we don't need to explain it, but we'll explain a little bit of it anyway. So I guess my specific question is,  as a matter of law, is he barred from bringing a return of capital defense? Absolutely. I think under this Court's decision in Boulware 4... But what about other courts? How have other courts interpreted that prong? Tolleson is tax court, but it's way before Boulware. But it might at least establish a principle that if you owned 100% of the parent company that owned 100% of the company at stake, there might be some sort of pass-through. I see that analogy, Your Honor. However, Tolleson, critically, is a dividend case and is saying that the defendant can't hide behind the corporation. And also there's language in Boulware that we've quoted in our brief about how when an individual sets up his affairs to take advantage of certain corporate structures, that's fine if he wants to do it legally, but he cannot then turn around and claim advantages that might exist had he set up his affairs differently. And it's correct that the Supreme Court did not precisely define what is meant... You didn't answer my question. I apologize. Have other circuit courts defined what that phrase means? In respect to stock? Right. Corporate distribution with respect to the corporation's stock. I don't remember, Your Honor. It's a vague statutory term, and the government has to prove it, so the government has to know what it means if it's an element. Well, actually, it's an affirmative defense. It's an affirmative defense. Defense has to prove it. Government would have to put in evidence to negate it. That's correct, and we relied in this case principally on this Court's language in Boulware saying that it suffices, and I'll just quote from that language, it suffices to say that at the very least the taxpayer must tender some evidence of a nexus between the corporate distribution and stock ownership or show there was no other alternative explanations, and the showing that was made in Boulware where the defendant was a stockholder was deemed insufficient, and here the defendant is not even a stockholder, and Unity America Fund is a separate entity with separate tax returns, and moreover, I think that what really negated the availability of this defense is that even if we make that assumption that, okay, the defendant is the equivalent of Unity America Fund, and we're going to make that assumption and give him the benefit of that prong, the overwhelming evidence, even with multiple bites at the apple that this district court gave to the defense with opportunities for rebriefing, the overwhelming evidence was that the basis had been wiped out. And did the court have that evidence before it made the decision to preclude the theory of the defense? Absolutely, Your Honor. Yes. That was in the motions and limine briefing, and I can cite to you. I apologize, Your Honor. I thought I had the excerpt of record citation at my... Were you the trial counsel? I was, but it was absolutely put before the court that the basis had been wiped out in a response of pleading after the defendant said that he did not remember. That's when we put in the authenticated bank records and the declaration from the forensic accountant. Opposing counsel says it would be unfair to look at Mr. Visconti's testimony about borrowing the money from the corporation after his return of capital defense has been precluded. Do you disagree with that? It's an interesting question. I mean, it's kind of floating the idea that the defendant perjured himself. But I think there's language certainly in Boulware that the record as a whole is looked at, and in Boulware there were multiple theories, including that it was a loan that were floated. So I'm certainly not prepared to agree with it. But, again, I think we needed to address that, and I also would say that the Vallejo opinion and the idea that he was deprived of a defense is just not present here. Vallejo was a situation where there were 10 years of documented records of a learning disability and speech difficulties, and the defendant was precluded from putting that on as an actual defense, which would be very relevant to his defense. This is not remotely comparable. This was by the mathematics, by the facts, a defense that was precluded. And after the district court gave numerous bites at this apple. A defense that was negated by the facts. All right, thank you, counsel. Thank you. Mr. Bernstein, you have some time left. Thank you so much, Honor. So this is an unusual case because the Boulware 2009 decision says we have to do a thorough examination of the record to see whether the offer of proof was sufficient. In this case, we happen to have had before this bankruptcy proceedings and a divorce proceeding in which a lot of evidence came out. In the ordinary case, you might not have those prior proceedings where you'd have prior declarations. So what do you think that length, what record would the district court be reviewing in the ordinary case to determine whether or not there was a showing sufficient to put on the theory of the defense? In the ordinary case, without the prior bankruptcy proceeding, it would be just the declaration from the defendant and perhaps a declaration from an expert because there would be none of the prior litigation. But I would ask the court to remember that in Boulware, at 977 foot 04, it says, nothing precludes a defendant in a tax evasion case from asserting a defense that is inconsistent with information falsely reported on his challenged tax returns. And the fact that we're having this debate about whether it's a return of capital or not just proves the point. I don't know. I'm not asking for a ruling. This is not a summary judgment motion. This is saying a defendant gets to make his defense. And before I sit down, I just want to address, because Judge Bybee has asked several times about the UAF situation. So I'd like to make two points, and that is that Mr. Visconti is somehow different from UAF. So he owned 100 percent of UAF, right? But UAF was multiple entities removed. So the government wants you to rely on the bankruptcy filings, right? So what does the bankruptcy trustee say? Quote, UAF is the alter ego of defendant Visconti, and there exists at all times mentioned, and has existed, a unity of interest and ownership between UAF and Visconti such that any separateness has ceased to exist. That's at ER 30 and 31. The government doesn't get to have it both ways. But was UAF a shareholder in Axiom? I thought it was not. I thought it was. There's actually an interim company called JVE. UAF owned 90 percent of JVE, and JVE owned 92.5 percent of Axiom Holdings, and Axiom Holdings owned 100 percent of Axiom. Right, and at ER 2, the government says, quote, the beneficial owner of approximately 83.25 percent of Axiom is John Visconti. What does the beneficial owner mean? That's the government's words. He is, that's ER 2, he is the beneficial owner. The beneficial owner does have a technical meaning in corporate law. Right. But that doesn't mean he's a shareholder. But he's entitled to the corporate distributions. Is that, there's something in the corporate documents that says the beneficial owner is entitled to corporate distributions, or what are you talking about? Well, the only person who capitalizes it is John Visconti. Okay, you're saying just as a practical matter, but not as a legal matter. I would submit it as both. But this is the whole problem here. And when he capitalized this, did he capitalize it through UAF? Did he put the money into UAF, which? That's the second point I wanted to get to, Your Honor, is the government's argument about this is, you know, we use the term kind of too cute by half. If this is the deal, that there's a demarcation between UAF and Mr. Visconti, well, then their whole case falls apart because the payments are made to UAF. So if then UAF owes the money, not John Visconti. If they want a corporate veil, then they have to deal with it on the back end, too, right? It can't just be a shield. It has to be a sword for Mr. Visconti. So then UAF owed these taxes, not Mr. Visconti, because the distribution slash diversions go to UAF. They can't have it both ways. We know this is a closely held corporation. These corporate veils are nothing but a sheet. Mr. Visconti, any separateness has ceased to exist. It's Mr. Visconti is the beneficial owner, and thank you for bearing with me. I know I'm solidly over my time, but let the defendant present his defense. The jury will do the right thing, but that's not the point. The defendant gets to present his defense. Thank you, Your Honors. Thank you very much, Counsel. U.S. versus Visconti will be submitted.
judges: Wardlaw, Bybee, Ikuta